IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, a non-profit corporation,<br><br>    Petitioner/Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE, an agency of the United States; UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the United States; JOHN R. ERICKSON, acting in his official capacity as Forest supervisor, Ashley National Forest; JUAN PALMA, acting in his official capacity as State Director of the Bureau of Land Management, Utah State Office; MIKE STIEWIG, acting in his official capacity as Field Office Manager of the Vernal Field Office of the Bureau of Land Management,<br><br>    Respondent/Defendants,<br><br>and<br><br>BERRY PETROLEUM COMPANY, LLC, a Delaware limited liability company,<br><br>    Intervenor-Respondent. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART FEDERAL RESPONDENTS' PARTIAL MOTION TO DISMISS**<br><br>Civil Action No. 2:14-cv-00349-DN<br><br>Judge David Nuffer |

    Respondents United States Forest Service ("Forest Service"), Bureau of Land

Management ("BLM"), John R. Erickson, in his official capacity as Forest Supervisor, Ashley

National Forest, Juan Palma, in his official capacity as State Director of the BLM, Utah State

Office; Mike Stiewig, in his official capacity as Field Office Manager of the Vernal Field Office

BLM (collectively "Respondents") move,[1] under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "to dismiss various claims and arguments"[2] in the Amended Petition for Review of Agency Action[3] filed by Petitioner WildEarth Guardians. The parties' memoranda and supporting documentation have carefully been reviewed. For the reasons set forth below, Respondents' Partial Motion to Dismiss is hereby GRANTED in part and DENIED in part.

## BACKGROUND

Congress passed the Federal Onshore Oil and Gas Leasing Reform Act ("Reform Act") in 1987.[4] Among other things, the Reform Act required the Forest Service to analyze lands that are available for oil and gas leasing.[5] In accordance with the Reform Act mandate, the Forest Service developed the 1997 Western Uinta Basin Oil and Gas Leasing EIS and Record of Decision ("1997 ROD").[6] The 1997 ROD opened portions of the South Unit of the Ashley National Forest for oil and gas leasing and development.[7] The 1997 ROD imposed a list of stipulations on future leases to minimize impacts from any development. Leases for the South Unit were issued the following year, 1998, to Berry Petroleum Company, LLC ("Berry Petroleum").[8]

In 2007, Berry Petroleum submitted a Master Development Plan ("MDP") to the Forest Service proposing to explore and develop the oil and gas reserves within the leased area by

---

[1] Federal Respondents' Partial Motion to Dismiss and Memorandum in Support of Partial Motion to Dismiss ("Partial Motion to Dismiss"), docket no. 25, filed July 18, 2014.

[2] *Id.* at 2.

[3] Amended Petition for Review of Agency Action and Complaint for Injunctive and Declaratory Relief ("Amended Petition"), docket no. 3, filed May 14, 2014.

[4] *Id.* ¶ 87.

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 88.

[8] *Id.* ¶ 90.

drilling up to 400 new oil and gas wells on up to 400 well pads. Over the next five years, the Forest Service analyzed Berry Petroleum's MDP proposal and finally, in February 2012, issued its Final Environmental Impact Statement ("FEIS"). The FEIS "considered the environmental impacts associated with the proposed project (Alternative 2), the no action alternative (Alternative 1), and two other options – Alternative 3 and Alternative 4"[9]

Based on the FEIS, the Forest Service issued a Record of Decision ("2012 ROD").[10] The 2012 ROD selected one of the alternatives (the "Project") considered by the Forest Service in its FEIS.[11] The alternative chosen incorporates, among other things, various mitigation measures and other requirements to minimize or mitigate surface impacts.[12] The 2012 ROD provides the operating framework for oil and gas development but does not authorize any ground-disturbing activities. Before ground-disturbing activities can be undertaken, Berry Petroleum must submit to BLM an application for permit to drill ("APD") for each well.[13] If Berry Petroleum submits an APD on National Forest System lands, then the Forest Service must first approve a proposed Surface Use Plans of Operation ("SUPOs") before BLM may approve the APD.[14]

Respondents' motion asserts that certain claims in the Amended Petition impermissibly challenge the terms of the 1998 Leases.[15] Specifically, Respondents take issue with certain parts of paragraphs 313, 336, 350–54, and 371 in Petitioner's Thirteenth, Fifteenth, Sixteenth, and

---

[9] *Id.* ¶ 91.

[10] *Id.* ¶ 92.

[11] *Id.* ¶ 91–92.

[12] *Id.* ¶¶ 245, 378, 410.

[13] *Id.* ¶ 95.

[14] *Id.*

[15] Partial Motion to Dismiss at 2.

Seventeenth Claims for Relief.[16] Respondents argue this challenge to the lease terms is untimely.[17]

## STANDARD OF REVIEW

Under Rule 12(b)(1),[18] federal courts do not presume jurisdiction, and the party asserting federal jurisdiction bears the burden of proof.[19] Motions to dismiss for lack of subject matter jurisdiction may take the form of a "facial attack on the complaint's allegations,"[20] or "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[21] Here, Respondents attack the facial sufficiency of the Amended Petition, and therefore, all allegations of the Amended Petition are accepted as true.[22]

## DISCUSSION

Respondents contend that certain parts of paragraphs 313, 336, 350–54, and 371 of Petitioner's Thirteenth, Fifteenth, Sixteenth, and Seventeenth claims for relief in its Amended Petition challenge the terms of the 1998 Leases issued to Berry Petroleum.[23] According to Respondents, such a challenge is barred by the Mineral Leasing Act's 90-day statute of limitation.[24] The Mineral Leasing Act, states in part, that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced

---

[16] *Id.*

[17] *Id.* at 3, 7–8 (citing 30 U.S.C. § 226–2; 43 C.F.R. § 3000.5).

[18] Fed.R.Civ.P. 12(b)(1).

[19] *Marcus v.Kansas Dep't of Revenue,* 170 F.3d 1305, 1309 (10th Cir.l999) (citing *Penteco Corp. Ltd. Partnership—1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir.1991)).

[20] *Holt v.United States,* 46 F.3d 1000, 1002 (10th Cir.1995) (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990)).

[21] *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co.* at 325).

[22] *Id.*

[23] Partial Motion to Dismiss at 8.

[24] *Id.* at 3, 7–8 (citing 30 U.S.C. § 226–2; 43 C.F.R. § 3000.5).

or taken within ninety days after the final decision of the secretary relating to such matter."[25] For this reason, Respondents state that "Petitioner's Thirteenth, Fifteenth, Sixteenth and Seventeenth Claims for Relief must be dismissed *to the extent* they challenge the lease terms."[26]

Petitioner, in its opposition,[27] argues that it is not contesting the terms of the 1998 Leases. Rather, it says it is alleging "that the Forest Service and BLM have failed to fulfill their statutory and regulatory obligations—including those imposed by the relevant Forest Plan—to formulate and implement 'additional alternatives, measures and stipulations, including additional [no surface occupancy] NSO stipulations, that would avoid adverse impacts to' identified Forest Resources."[28] "Thus, . . . [Petitioner] is asking for consideration and implementation of 'additional alternatives, measures and stipulations,' on top of, above and beyond or to supplement the 'terms' of, or stipulations attached to, the South Unit Leases."[29] Petitioner contends that "the obligation to consider and implement these 'additional alternatives, measures and stipulations' arises by virtue of the FEIS and ROD and APD and SUPO approvals."[30]

Petitioner recognizes that Respondents' issue is with Petitioner's use of the word "stipulation" and the phrase "no surface occupancy stipulations."[31] Petitioner states that Respondents "seem[] to be contending that by employing these words, . . . [Petitioner] is, as a matter of law, attacking the [1998] . . . Leases."[32] That is "Respondents appear[] to maintain that

---

[25] 30 U.S.C. § 226-2; 43 C.F.R. § 3000.5.

[26] Partial Motion to Dismiss at 2 (emphasis added). .

[27] Memorandum in Opposition to Federal Respondents' Partial Motion to Dismiss and to Intervenor's Response in Support of the Partial motion to Dismiss ("Opposition Memorandum"), docket no. 38, filed September 5, 2014.

[28] *Id.* at 9 (citing Amended Petition, ¶¶ 313, 336, 353–54, 371).

[29] *Id.*

[30] *Id.* at 10.

[31] *Id.* at 12.

[32] *Id.*

no stipulation, and certainly no 'no surface occupancy' stipulation, may be imposed on an oil and gas project after the relevant leases have been issued. The . . . [Respondents] may be implying that to ask for 'additional' stipulations is the same as attacking existing stipulations."[33] Petitioner states that the question then "becomes whether this Court has subject matter jurisdiction to consider whether the law may require the Forest Service and BLM to evaluate and apply 'additional' stipulations to oil and gas development on the [1998] . . . Leases."[34] Petitioner argues that the Court has jurisdiction to entertain its request for additional "stipulations" and bases its argument on examples within the 2012 FEIS and ROD, where the Forest Service considered and at times applied "additional stipulations" to the Project.[35] Petitioner provides a list of examples in support of its contention.[36]

Respondents reply that although both parties agree that the Mineral Leasing Act's statute of limitations bars any challenge to the terms of the 1998 Lease, Petitioner's arguments in its Opposition Memorandum "are nothing more than a back-door attack on the terms of the lease[.]"[37] Respondents state that Petitioner is trying to avoid the jurisdictional bar by attempting "to recast its claims as merely a request for additional or supplemental lease terms[.]"[38] Respondent argues that "Petitioner cannot circumvent the Mineral Leasing Act's statute of limitations by repackaging its claims as a request for 'additional' lease terms to supplement the terms of, or stipulations attached to, the [1998] South Unit leases."[39] Respondents point out that

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 13.

[36] *Id.* at 13–16.

[37] Reply in Support of Federal Respondents' Partial Motion to Dismiss at 1 ("Reply"), docket no. 39, filed September 19, 2014.

[38] *Id.* at 3.

[39] *Id.*

although the Forest Service and BLM have the authority to impose additional restrictions on Berry Petroleum's development of the leases, this does not, however, provide Petitioner with jurisdictional basis to challenge the original lease terms.[40]

Respondents contend that "the fact that the BLM and Forest Service subsequently imposed additional restrictions and mitigation measures on the development of certain leases in the [1998] South Unit [does not] provide Petitioner with a basis to request even more restrictions."[41] Respondents recognize that the 2012 ROD does impose additional restrictions on the development of the leases, but that these restrictions "are consistent with the underlying terms of the leases and the regulations, as required by 43 C.F.R. § 3101.1-2, and in no way suggest that the Agencies were 'required by the law' to impose additional restrictions on the leases terms themselves."[42] According to Respondents, if "Petitioner wishes to challenge the additional restrictions imposed by the Agencies on development it must identify the specific statutory or regulatory requirement that the Agencies violated in the 2012 Record of Decision approving a master development plan for the South Unit."[43]

Respondents, in conclusion, state that "[t]o the extent Petitioner believes the additional mitigation measures or restrictions imposed by the Agencies are inadequate to protect specific resources, it is on those grounds that it may challenge the 2012 Record of Decision approving a framework for the development of Berry Petroleum's leases."[44] But Petitioner may not "bring

---

[40] *Id.* at 5.

[41] *Id.* at 6.

[42] *Id.* (citing Opposition Memorandum at 17).

[43] *Id.* at 7.

[44] *Id.*

claims stating that the Agencies have not added enough restrictions or stipulations on the leases themselves to comply with the Mineral Leasing Act."[45]

It is clear that the present dispute centers on the use of the word "stipulation" and phrase "no surface occupancy stipulation." However, it appears neither party is disputing each other's arguments. Respondents argue that, pursuant to the Mineral Lease Act's statute of limitations, Petitioner is barred from contesting the terms of the 1998 Leases. Petitioner does not dispute this.[46] Petitioner, on the other hand, is arguing that this Court has jurisdiction to entertain its request for "additional alternatives, measures and stipulations" beyond the stipulations in the 1998 Leases. Petitioner does not cite to any authority for its contention, but instead cites a list of examples where Respondents have considered and applied what Petitioner considers "additional alternatives, measures and stipulations" in the 2012 FEIS and ROD.[47] After citing examples, Petitioner acknowledges that the Forest Service uses the words "mitigation measures" instead of the word "stipulation."[48] Still, Petitioner argues that "the supposed distinction between stipulation and mitigation measures is not meaningful for the purposes of this case."[49]

Looking at the specific paragraphs at issue, it appears that only the language in paragraph 336 could be viewed as contesting the terms of the 1998 Leases. In the first sentence of paragraph 336, it states: "BLM must also 1) ensure that *leases include stipulations* that reflect additional reasonable measures and restrictions required to comply with the law and minimize adverse impacts to resource values, land uses or users . . . ."[50] Seeking to ensure that "leases

---

[45] *Id.*

[46] Opposition Memorandum at 2.

[47] *Id.* at 12–16.

[48] *Id.* at 16.

[49] *Id.* at 14–15, n. 9.

[50] Petition at 91, ¶ 336.

include stipulations" involves challenging the existing leases themselves. To this extent, the above quoted language in paragraph 336 is hereby stricken.

The remaining paragraphs—313, 350–54, and 371—do not appear to be contesting the terms of the 1998 Leases. The disputed language in these paragraphs read in relevant part:

> Paragraph 313: "In any case, before the project may proceed, the Forest Service and BLM must consider and adopt *all additional alternatives, measures and stipulations, including additional NSO stipulations*, that would avoid adverse impacts to water quality . . . ."[51]
>
> Paragraph 350: "Thus, the Forest Service was wrong to suggest that despite the adverse impacts to water quality from the 400-well Project, the agency was *prohibited from placing a no surface occupancy (NSO) stipulation* on Sowers Canyon Creek and Mine Hollow Creek."[52]
>
> Paragraph 351: "Therefore, at least, the Forest Service is compelled to consider a reasonable *range of alternatives* to the propose project and is compelled to *evaluate stipulations* that protect and enhance water quality."[53]
>
> Paragraph 352: "Where the protection of Forest resources, the avoidance of riparian areas, wetlands and zones of unstable soils and compliance with the Clean Water Act so require, the Forest Service must *consider alternatives* to the proposed action that limit development *with additional stipulations*."[54]
>
> Paragraph 353: "The agency's failure to consider and adopt *alternative stipulations* to protect water quality is based on a false premise and therefore is arbitrary and capricious. In refusing to consider alternatives, measures and stipulations that would do more to avoid adverse impacts to water quality . . . ."[55]
>
> Paragraph 354: "In any case, before the project may proceed, the Forest Service *must consider and adopt all additional alternatives, measures and stipulations, including additional NSO stipulations,* that would avoid adverse impacts to water quality . . . ."[56]

---

[51] *Id* at 85, ¶ 313 (emphasis added).

[52] *Id.* at 95, ¶ 350 (emphasis added).

[53] *Id.* ¶ 351 (emphasis added).

[54] *Id.* ¶ 352 (emphasis added).

[55] *Id.* ¶ 353 (emphasis added).

[56] *Id.* ¶ 354 (emphasis added).

Paragraph 371: "In any case, before the project may proceed, the Forest Service *must consider and adopt all additional alternatives, measures and stipulations, including additional NSO stipulations*, that would avoid adverse impacts to water quality . . . ."[57]

Petitioner's use of the words "stipulation" and phrase "no surface occupancy stipulation," when read in context, reveal that Petitioner is using the words interchangeably with "mitigation measures" and "restrictions" and is not trying to supplement the terms of, or stipulations attached to the 1998 Leases.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Respondents' Motion[58] is GRANTED in part as to the first sentence of paragraph 336, and DENIED in part as to paragraphs 313, 350–54, and 371.

Dated February 1, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[57] *Id.* at 101, ¶ 354 (emphasis added).

[58] Docket no. 25.